**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

GARY RUSSELL BOUSAMRA,        No. CIV S-07-0019-FCD-CMK-P

        Petitioner,

    vs.              <u>ORDER</u>

D.K. SISTO, et al.,

        Respondents.

_____/

        Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole in August 2005. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 11), petitioner's reply (Doc. 12), and the parties' supplemental briefs (Docs. 15 and 17). Also before the court is respondents' request for a stay of proceedings (Doc. 16).

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

Petitioner is serving a sentence of fifteen years to life following his conviction for second degree murder in 1986. At a third parole consideration hearing in August 2005, the Board of Parole Hearings ("Board") found petitioner unsuitable for parole. The Board cited the following factors: (1) the nature of the commitment offense; (2) insufficient participation in substance abuse and self-help programming; (3) lack of parole plans in California; and (4) opposition to release submitted by the district attorney's office and the victim's family.

Petitioner challenged the 2005 denial of parole by way of a habeas corpus petition filed in the San Diego County Superior Court. That petition was denied in a reasoned decision issued on May 17, 2006. The state court held:

> Petitioner argues he was deprived of his constitutionally protected liberty interest in parole because there is no evidence to support the Board's decision denying him parole. However, this claim is without merit.
>
> * * *
>
> The parole board in this case did not rely solely on Petitioner's commitment offense in denying him parole. The BPH gave consideration to all the applicable factors regarding suitability for parole as set forth in [the regulations]. First, the BPH considered the underlying commitment offense. . . . [¶] The Board also considered Petitioner's prior criminal history and social history. . . .
>
> The Board next considered Petitioner's institutional behavior, and commended Petitioner for remaining disciplinary-free. (citations omitted). However, the Board also noted Petitioner has not sufficiently participated in substance abuse programs, even after the recommendation of the prior [parole suitability] panel. (citation omitted). The Board states Petitioner's involvement in those programs has been recent, and that Petitioner requires more time to explore those issues. (citation omitted).
>
> * * *
>
> The Board next considered Petitioner's parole plans. (citation omitted). Petitioner has an offer of residence and employment in Michigan, but no residence or employment offers in California. Since there is no guarantee Petitioner will be able to parole to Michigan, the Board recommended Petitioner make parole plans within California. (citation omitted).

///

The Board also noted the responses to 3042 notices indicate opposition to a finding of parole suitability, specifically from the San Diego County District Attorney. (citation omitted).

After weighing the above factors, the BPH determined the positive aspects did not outweigh the unsuitability for parole, and denied parole for four years. The Board stated:

> We believe that you need, to the extent available, to involve yourself in continued self-help or therapy as available, to continue to explore underlying reasons as underneath – underlying this offense. you appear to us to be willing to discuss it more than you've indicated before. We view that as a positive direction for you to gain further insight into why this occurred. And we encourage you to continue to do that. However, at this point we feel until further progress is made, we believe you continue to pose a threat, again because of the crime that you incurred. You must further – and this relates specifically, not only to self-help generally, but also to the – the NA, AA, substance abuse concerns that we have. And whatever gains you've made are recent and need to be developed over a period of time.

Based on the above, there is "some evidence" in the record to support the Board's finding that Petitioner is unsuitable for parole. This Court finds no abuse of the Board's discretion is apparent in this case.

The California Court of Appeal denied relief in a reasoned decision issued on July 31, 2006. The court stated:

> Gary Bousamra is serving a 15 years-to-life sentence after pleading guilty to second degree murder in 1986. The victim was his former wife, Lois Bousamra (Lois). On August 24, 2005, the Board of parole Hearings (Board) conducted a subsequent parole consideration hearing and declined to set a parole date for Bousamra on the ground he would pose an unreasonable risk to society or public safety if released. The Board based its decision on the violent, cruel and callous manner of the offense, the fact the victim was abused or defiled and the motive for the crime was trivial. The Board noted Bousamra has been a "good prisoner" and "disciplinary free" but expressed its concern Bousamra was not deeply involved in NA or AA and needed concrete parole plans in San Diego. The Board set the next hearing in 4 years.
>
> Bousamra contends the Board's decision is arbitrary, capricious, unreasonable, and unsupported by reliable evidence. He claims he is entitled to parole under an express condition of his plea agreement.

/ / /

/ / /

The Court of Appeal rejected petitioner's claim for the same reasons cited by the San Diego County Superior Court. The California Supreme Court denied relief without comment or citation on October 11, 2006.

Respondents concede that petitioner's federal claim is exhausted.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

/ / /

/ / /

/ / /

/ / /

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, under § 2254(d), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

/ / /

/ / /

/ / /

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>See</u> <u>id.</u> at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. <u>See</u> <u>id.</u> In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. <u>See</u> <u>id.</u> at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. <u>See</u> <u>Benn v. Lambert</u>, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. <u>See</u> <u>id.</u> If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. <u>See</u> <u>id.</u>

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. <u>See</u> <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in <u>Williams</u>, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. <u>See</u> <u>Williams</u>, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. <u>See</u> <u>id.</u> at 410; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner challenges the Board's denial of parole in August 2005, arguing that the decision was not supported by some evidence that he would have posed an unreasonable risk of danger at that time if released. Respondents argue: (1) petitioner does not have a protected liberty interest in parole; (2) there is no clearly established Supreme Court precedent applying the "some evidence" standard in the parole context; and (3) even if there is protected liberty interest and the "some evidence" standard applies, the standard was met in this case.

/ / /

/ / /

/ / /

/ / /

## A.    Applicable Law

In <u>Sass v. Bd. of Prison Terms</u>, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit held that California's parole statute does, in fact, create a federally cognizable liberty interest. <u>See</u> <u>id.</u> at 1127-28.  On the merits, the court also rejected the argument that the "some evidence" standard does not apply in the parole context.  <u>See</u> <u>id.</u> at 1128-29.  Under <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985), due process requires that a prison disciplinary hearing decision be based on "some evidence" in the record as a whole which supports the decision.  This standard, which the court has also applied in the parole context, is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." <u>Id.</u> at 455-56.  Additionally, this standard requires that the evidence underlying the Board's decision must have some indicia of reliability.  <u>See</u> <u>Biggs v. Terhune</u>, 334 F.3d 910, 915 (9th Cir. 2003).

In <u>Sass</u>, the Ninth Circuit also addressed the argument that the requirement of "some evidence" in the parole context has not been clearly established by the Supreme Court. The Ninth Circuit held:

> <u>Hill</u>'s some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." (citation omitted).  <u>Hill</u> held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted).  To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest – that in parole – without support or in an otherwise arbitrary manner.  We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

> <u>Sass</u>, 461 F.3d at 1129.

/ / /

/ / /

/ / /

/ / /

Because <u>Sass</u> and <u>Biggs</u> are binding precedent, this court must also conclude the "some

evidence" standard is clearly established law for purposes of habeas corpus relief under AEDPA.[1]

Therefore, this court will apply the "some evidence" standard on the merits. <u>See</u> <u>id.</u>; <u>see also</u>

<u>Irons v. Carey</u>, 505 F.3946, 851 (9th Cir. 2007).

       In assessing whether the "some evidence" standard has been met, the analysis is

framed by the state's statutes and regulations governing parole suitability. <u>See</u> <u>Biggs</u>, 334 F.3d at

915. Thus, this court looks to California law to determine the findings that are necessary to deem

a prisoner unsuitable for parole and then reviews the record to determine whether there is "some

evidence" supporting the decision to deny parole. Under California Penal Code § 3041(b) and

California Code of Regulations, Title 15, § 2402(a), once the inmate has served the minimum

term required, a release date shall be set unless release currently poses an unreasonable risk of

danger to society.[2] It follows from this that, even though there may be some evidence that a

particular unsuitability factor exists, this does not necessarily mean that there is some evidence

/ / /

---

[1]    The court is aware of the Ninth Circuit's holding in <u>Hayward v. Marshall</u>, 512 F.3d 536 (9th Cir. 2008), <u>rehearing en banc granted</u>, 527 F.3d 797 (9th Cir. 2008), where the court applied the "some evidence" standard as clearly established law and concluded that habeas relief was granted because the continued reliance on immutable factors violated due process. However, that case is not binding precedent pending issuance of the mandate. <u>See</u> <u>Hayward</u>, 527 F.3d 797 ("The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit"). Among the issues being considered on rehearing is whether there is any clearly established law in the parole context. If the Ninth Circuit ultimately concludes that there is no clearly established law, habeas relief would be unavailable. <u>See</u> <u>Moses v. Payne</u>, 555 F.3d 742, 754 (9th Cir. 2009) (citing <u>Wright v. Van Patten</u>, 552 U.S. 120, 128 S.Ct. 743, 746 (2008)).

[2]    The regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability. <u>See</u> Cal. Code Regs., tit 15 § 2402(c)-(d). Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense, where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes; (5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release. <u>See</u> Cal. Code Regs., tit. 15 § 2402(d).

1    of a current unreasonable risk of danger to the community if the inmate is released.[3]

2            In addition to concluding that due process requires "some evidence" in the parole

3    context based on <u>Hill</u>, the Ninth Circuit has addressed whether the continued reliance on

4    immutable factors satisfies this standard and whether continued reliance solely on such factors

5    ignores the goal of rehabilitation and violates due process.  In <u>Biggs</u>, where the petitioner was

6    challenging the first denial of parole based solely on the facts of the commitment offense, the

7    Ninth Circuit concluded that the denial was based on some evidence – the facts of the

8    commitment offense – even though other findings made by the Board in Biggs' case lacked

9    evidentiary support.  In dicta, however, the court acknowledged that, sometime in the future, the

10   continued reliance on immutable factors could violate due process.  <u>See Biggs</u>, 334 F.3d at 917.

11   From this, it is clear that the Board may rely solely on immutable factors for the first denial of

12   parole given the minimal passage of time between the commitment offense and parole decision.

13           As to subsequent denials of parole and the continued reliance on immutable

14   factors, the Ninth Circuit has not drawn any bright line.  In <u>Sass</u>, where the petitioner was

15   challenging the third denial of parole, the Ninth Circuit affirmed the denial of the habeas petition.

16   <u>See Sass</u>, 461 F.3d at 1129.  The court did not conclude that reliance on immutable factors (the

17   facts of the commitment offense and the petitioner's prior criminal history) – even for a third

18   time – violated due process.  <u>See id.</u>  The court held:

19                   In making a judgment call based on evidence of pre-conviction
                 recidivism and the nature of the conviction offense, the Board cannot be
20               categorized as acting arbitrarily.  Here, the Board based its finding that
                 Sass was unsuitable for parole on the gravity of his convicted offenses in
21               combination with his prior offenses.  These elements amount to some
                 evidence. . . .  Consequently, the state court decisions upholding the
22               denials were neither contrary to, nor did they involve an unreasonable
                 application of, clearly established Federal law as determined by the

23

24           [3]      The California Supreme Court has held that, under the regulations, the denial of
         parole may be predicated on the commitment offense only where the Board can point to factors
25       beyond the minimum elements of the crime that demonstrate that, at the time of the suitability
         hearing, the inmate will present an unreasonable risk of danger to society if released.  <u>See In re
26       Dannenberg</u>, 34 Cal.4th 1061, 1071 (2005).

Supreme Court of the United States.

Id.

In <u>Irons v. Carey</u>, 505 F.3d 846 (9th Cir. 2007), <u>rehearing en banc denied</u>, 505 F.3d 951 (9th Cir. 2007), the Ninth Circuit reversed the district court's grant of a habeas petition challenging the eighth denial of parole, concluding that the facts of the petitioner's commitment offense alone constituted some evidence of unsuitability under California law.  The court in <u>Irons</u> noted that none of the Ninth Circuit's cases regarding reliance solely on immutable factors to deny parole involved inmates who had served the minimum terms of their sentences. Specifically, the court observed:

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.  Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125.  All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

> <u>Id.</u> at 853-54.

As to the continued reliance solely on immutable factors, the court noted in dicta:

> Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation.  In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole.  We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

> <u>Id.</u> at 854.

///

11

From <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u> the court can conclude that, where the challenged parole denial occurs before the petitioner has served the minimum term of his sentence, the continued reliance solely on immutable factors to deny parole for up to eight times does not violate due process.  It may be that, so long as the inmate has not served his minimum sentence, the Board may deny parole any number of times based solely on immutable factors.[4]  Where the inmate has served the minimum term, the following rules apply:  (1) California law creates a liberty interest in parole for prisoners who have served the minimum sentence, <u>see</u> <u>Sass</u>, 461 F.3d at 1127-28; <u>Irons</u>, 505 F.3d at 853-54; (2) the Board's decision to deny parole must be supported by "some evidence" that the prisoner's release would have posed an unreasonable risk of danger to the community at the time, <u>see</u> <u>Sass</u>, 461 F.3d at 1128-29; and (3) the evidence relied upon by the Board must have some indicia of reliability, <u>see</u> <u>Biggs</u>, 334 F.3d at 915.  In some cases where the minimum term has been served, the continued reliance on immutable factors to deny parole may violate due process.  <u>See</u> <u>id.</u> at 917; <u>see also</u> <u>Irons</u>, 505 F.3d at 854.

**B.     Analysis**

Given the foregoing Ninth Circuit cases, the court must reject respondents' argument that petitioner does not have a protected liberty interest in parole.  The court must also reject respondents' argument that the "some evidence" standard does not apply in the parole context.  Therefore, the court will focus on the parties' arguments concerning whether this standard has been met here.  Respondents contend:

> Here, the state courts' adjudication of Bousamra's habeas petitions challenging the Board's decision was neither contrary to, nor an unreasonable application of, clearly established federal law because there is some evidence in the record to support the Board's conclusion that he was unsuitable for parole.  As support for its decision, the Board cited Bousamra's crime, his insufficient participation in substance abuse, his lack of parole plans in California, and opposition to parole from the prosecutor's office and the victim's family. (citation to record omitted).

---

[4]     Such a reading of the cases would be consistent with California law, which does not require that a parole release date even be considered until the inmate has served the minimum term of his sentence.  <u>See</u> Cal. Penal Code § 3041(b) and Cal. Code of Regs., Title 15, § 2402(a).

These circumstances were all appropriate considerations that provided
some evidence of Bousamra's unsuitability.  (citations omitted).

In its decision, the Board began by noting the nature of the commitment offense.

The Board also noted positive institutional behavior and stated that petitioner had been "by and

large a good prisoner."  Specifically, the Board noted that petitioner had committed no

disciplinary violations and "caused the institution no problems."  The Board did note, however,

that it felt petitioner's participation in programming had not been sufficient, stating:

> . . . A note of concern is your failure to involve yourself deeply in the NA
> or AA, or other substance abuse kind of program, particularly in light of
> the recommendation of the prior panel, and your recent involvement in
> those activities, it's hard for this panel to understand whether your
> participation was just a result of their suggestion, or represents a true
> commitment on your behalf to deal with that issue, which although you
> indicated was not a part of this crime, to some degree.  Sometimes you say
> it was, sometimes you say it wasn't. . . .  We don't believe that narcotics
> played a significant factor in this offense, but at the same time, it was clear
> that, by your own admission, that was a significant event in your life, and
> in light of the panel's recommendation that you seriously involve yourself
> in those kinds of programs, we are concerned that you haven't done that.
> To the extent that you have done that, in light of your period of
> incarceration, it constitutes a rather recent acknowledgment of that. . . .
> And given the recent gains that you've made, we continue to be concerned
> about your ability to be released safely into the community at this time.

The record contains a psychological evaluation prepare in May 2005 for the

August 2005 hearing.  Regarding substance abuse, the evaluation noted:

> Mr. Bousamra stated that he has a history of marijuana abuse which began
> when he was a teenager.  He also stated that he and his wife abused
> cocaine on a weekly basis, and both were heavy methamphetamine users at
> the age of 29.  Mr. Bousamra stated that he had abused cocaine on the date
> of the instant offense. . . .

At the hearing, petitioner told the Board that he had been using "speed" and marijuana around the

time of the crime.  The Board noted that the victim had written in her diary that drugs were a

problem between she and petitioner.  The psychologist performing the May 2005 evaluation

concluded that the commitment offense is ". . . related to some pent up rage and anger that was

aggravated or marginalized by substance abuse."

13

1  Regarding petitioner's institutional history of participation in self-help

2  programming, the Board in August 2005 noted that, since petitioner's last suitability hearing in

3  2000, the record only reflects a "recent Chrono regarding violence prevention."  The Board

4  continued by outlining the following self-help history: (1) five sessions in anger management

5  completed March 2005; (2) anger management certificate dated April 6, 2005; and (3) regular

6  participation in AA and/or NA in 1997.  Petitioner also told the Board at the August 2005

7  hearing that he had again started participating in NA "[a]about three and a half months ago."  As

8  to participation in NA, petitioner told the Board that for several years the NA and AA programs

9  at his prison had been shut down and that they had only recently been re-opened.  On this point, a

10  deputy parole commissioner stated:

11          It sounds like, when I look at the Initial Parole Consideration Hearing, as
        well as the one in year 2000, that there's a lot of years in which you could
12          have participated, and which you showed not to.  Can you tell me why?

13  Petitioner responded: "No, I can't.  I just was lazy.  I didn't go."

14          The Board rightfully expressed concern that petitioner had not seriously or

15  consistently participated in any self-help programming in the years since his initial suitability

16  hearing and, particularly, in the years since his most recent hearing in 2000 at which time the

17  Board recommended further self-help programming.  While the NA and AA programs may not

18  have been available to petitioner from 2003 until the programs were offered again in early 2005,

19  petitioner offers no reasonable explanation as to why he did not participate in these programs

20  before 2003 when they were available to him.  He merely states that he was lazy and didn't go.

21  The court finds that this record certainly supports the Board's conclusion that petitioner had not

22  demonstrated consistent long-term self-help programming and that any gains with respect to self-

23  help were recent.  Given evidence of the role substance abuse played in petitioner's crime, the

24  Board was justifiably concerned that petitioner's lack of commitment to self-help constituted a

25  risk of danger to the community upon release.

26  / / /

The Board also commented on petitioner's parole plans:

> . . . Your parole plans appear to be moving along. It's your intent to return
> to Michigan. One thing that I would suggest to you – it is important,
> whether or not you are able to return to Michigan even relies upon factors
> outside of your control and our control. These are decisions that would be
> made first by the State of California upon your application, and then by the
> State of Michigan. What we do know is that if you are found suitable,
> unless the Board orders otherwise, you would be returned to your county
> of commitment. And in assessing whether or not you have appropriate
> plans for parole should you be paroled there, whether or not you're
> employable there, that's the first place we're going to look. And so, I
> might suggest to you that one thing about your parole plans, you rely very
> much upon your family and your family's friends and your home
> community to be of support to you. That is certainly a reasonable avenue
> to explore, but at the same time, we would urge you to be more aggressive
> in also pursuing an alternative plan in California which you can present to
> the Board at your next hearing, because that is going to be an element
> that's going to be considered.

In denying parole, the Board in 2005 stated that petitioner could not count on return to Michigan

and would need plans for release in California. It is undisputed that petitioner had no such plans

at the time parole was considered in 2005. The court finds that petitioner's lack of parole plans

upon release in California constitutes some evidence supporting the Board's determination.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV. CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be denied and that respondents' request to stay proceedings be denied as unnecessary.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 16, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE